```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                              13 CR 423 (MHD)

 5   KERATASHA GREENE,

 6                  Defendant.

 7   ------------------------------x

 8                                            New York, N.Y.
                                              September 20, 2013
 9                                            11:00 a.m.

10
     Before:
11
                     HON. MICHAEL H. DOLINGER,
12
                                           Magistrate Judge
13

14                            APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     PATRICK EGAN
17        Assistant United States Attorney

18   FEDERAL DEFENDERS OF NEW YORK
          Attorneys for Defendant
19   MARTIN COHEN

20

21

22

23

24

25
```

1        THE DEPUTY CLERK:  United States of America v.
2   Keratasha Greene.  Counsel, state your name for the record.
3        MR. EGAN:  Patrick Egan for the government, joined at
4   counsel table by Kevin Russell with the Department of Veterans
5   Affairs.
6        MR. COHEN:  Good morning.  Martin Cohen on behalf of
7   Keratasha Greene.  With me at counsel table is Jonathan Aragon,
8   a paralegal in our office.
9        THE COURT:  Greetings and salutations.
10       MR. COHEN:  Your Honor, before we begin, I wanted to
11  apologize for our not being here at 9:30 this morning to the
12  agents and the government and the Court.
13       Ms. Greene does not have a great excuse other than
14  that she's a 20 year old who was stretched very thin.  Just
15  very briefly, I'll tell you about her day yesterday, which was
16  that she was at the probation office at 9 a.m. working at the
17  A&P at 11, working at her job at the Bronx Zoo at 6, worked
18  until 1 a.m., got home at 2 a.m., and slept through her alarm
19  this morning.  We're very sorry.  We're not going to try and
20  make up excuses, but it is not reflective of any disrespect to
21  the Court or the government or the officers.
22       THE DEFENDANT:  I'm sorry for that.  Thank you.
23       THE COURT:  Understood.
24       I've received the presentence report from probation, a
25  letter from Mr. Cohen addressing sentence, and a sentencing

1     memo from the government.  I want to first ask are there any
2     objections as to either the factual findings or the
3     calculations reflected in the presentence report?
4              MR. COHEN:  No objections from the defense, your
5     Honor.
6              MR. EGAN:  None from the government, your Honor.
7              THE COURT:  Thank you.  Mr. Cohen, I'll hear from you
8     on sentence.
9              MR. COHEN:  Thank you, your Honor.  First of all, I
10    appreciate that the government and the probation department
11    have taken the position that incarceration is not an
12    appropriate sentence here.  The government and probation are
13    requesting that the Court impose some period of supervision,
14    and we're arguing that under the circumstances here, it is not
15    necessary.
16             There is no dispute about sort of the fundamental
17    nature of Ms. Greene's character.  This is a young woman who
18    had a very difficult upbringing in a very dysfunctional
19    household.  When she was born her mother was incarcerated, her
20    father was a chronic alcoholic with very serious mental and
21    emotional disabilities.  At a very young age, Ms. Greene became
22    responsible for caring for her father, which her mother wasn't
23    capable of doing and her brother wasn't capable of doing.
24             As the letter from Ms. Greene's mother to the Court
25    makes clear, Ms. Greene also in some ways takes care of her

1    mother as well. She writes to the Court "how Keratasha cooks
2    for me. All I have to do is say 'fat girl, mommy don't feel so
3    good,'" and it's Ms. Greene who is taking care of her parents.
4    This has been going on for a very long time.
5         Since the age of 15 she's been working full time or
6    working part time while going to high school, and later part
7    time while in college and at times full-time. She graduated
8    from high school on time, has had a succession of jobs while
9    attending college. She's currently at Bronx Community College.
10   In this past year she's had at one point three jobs at the same
11   time, and now she has two jobs, working at the deli at the A&P
12   and working for the Bronx Zoo as a caterer where she often
13   works nights and weekends. She's an extraordinarily
14   hard-working young woman.
15        There is no question that the offense here was a
16   serious one, and there should be no suggestion that our request
17   for a sentence that doesn't have additional supervision is a
18   sign that the offense wasn't serious. But there also should be
19   no question for this Court that it was an absolutely aberrant
20   act in an otherwise exemplary life. Someone who has really
21   shown amazing fortitude under difficult circumstances. She has
22   no criminal history. She is 20 years old.
23        In the emergency room, with her delusional father who
24   she's seen harm other people, afraid and frightened, and when
25   she was told to leave her father, she lost it. She panicked.

D9K3GRES                        Sentence

1   She fought against the officers.  The government has described
2   her conduct, and she regrets it.  But in that moment, it was
3   someone acting out of panic and fear for her father.
4           After being arrested and spending a night in custody
5   and coming here the next day, the fact that her anger
6   continued -- not her anger, but her sort of panic state
7   continued, does not suggest that this was anything other than
8   an aberrant act.  When she got home and she was able to find
9   out that her father was okay, that was it.
10          There is no indication in this young woman's life
11  before or after of any similar conduct that warrants additional
12  punishment.
13          I want to talk briefly about what the punishment is
14  here.  And the punishment here is a federal misdemeanor
15  conviction for assault.  I'm not sure that the government fully
16  comprehends what that means.  There is currently no way that a
17  person can ever expunge a federal conviction.  It will be
18  something that Ms. Greene will have to face throughout her
19  life.  And in a very difficult economic climate where it is
20  extremely difficult to find good jobs, and where you're against
21  a similarly situated candidate and the employer looks at your
22  record and it says federal misdemeanor assault conviction, that
23  is going to affect her prospects forever.  And she's going to
24  have to work through that forever.  And that's extraordinarily
25  punitive.

1            It was always our position that this was a case that
2    pretrial diversion was the appropriate outcome here.  I
3    appreciate that the government reduced the charge from a felony
4    to a misdemeanor.  But, it's a very serious conviction for
5    someone who has the type of prospects that Ms. Greene has.
6            Ms. Greene has been on pretrial supervision since
7    January 1st, or 2nd.  The pretrial services officer wrote the
8    Court a memo indicating that Ms. Greene missed several random
9    urine tests as well as one office visit.  All of those missed
10   visits were related to someone who was working and unable to
11   make it down to the probation office.  She called, she went the
12   next day or shortly thereafter.  Not excusing it, but it is not
13   at all a sign of her drug use.  Because as the Court I'm sure
14   knows, marijuana would still be in someone's system for 30
15   days.
16           THE COURT:  You said that she called each time.  Did
17   she call the day of her appointments or no?
18           MR. COHEN:  So, I think -- if I can just look at
19   Ms. Powers' memo.  I know that when --
20           THE COURT:  I didn't think the memo particularly --
21           MR. COHEN:  -- said one way or the other.
22           THE COURT:  Right.
23           MR. COHEN:  I know when she missed her appointment on
24   I believe it was September 3, that she called from work to say
25   that she couldn't be there, and Ms. Powers told her to come the

1  next day also, and told her she was going to write to the
2  Court.
3         Similarly, with the urine test, she called Ms. Powers
4  and explained that she couldn't get from the Bronx to the
5  probation office at 5 o'clock and was tested shortly
6  thereafter.
7         It is not great, obviously, but it doesn't indicate
8  someone who is using drugs, and it goes to sort of a separate
9  argument which is what is the purpose of additional supervision
10 here.  On the rehabilitative side of supervision you want to
11 help someone with housing, with getting jobs, with going to
12 school.  Here you have someone who before and after this arrest
13 has been doing all that.  Aside from the fact that she's been
14 on pretrial supervision, that has nothing to do with her work
15 ethic or her keeping jobs or her going to school.
16         She's not someone who needs to be in drug treatment.
17 The probation officer's suggestion is simply that because she
18 tested positive in January, the condition of drug testing
19 should continue.  But, the sort of positive aspects of
20 supervision are not necessary here.  Nor should there be a
21 concern that making sure someone doesn't commit another crime
22 an issue here.  This is someone with no criminal history, whose
23 conduct was aberrant, who is not going to commit another crime
24 who has this very serious experience.
25         So, sort of to go through the menu of penalties,

1   putting aside -- obviously we can address it, but putting aside
2   incarceration for the moment.  The probation office recommends
3   a fine.  I don't believe a fine is necessary here, given
4   Ms. Greene putting herself through school, and all of her
5   trying to sort of build a life for herself.  I don't think that
6   is necessary to address her conduct.  I definitely disagree
7   with the probation office and the government's request for
8   community service.  Under these circumstances, which is that
9   this is someone who is working all the time and going to
10  school.
11           THE COURT:  Let me ask you one thing.
12           MR. COHEN:  Sure.
13           THE COURT:  About the utility, at least from the
14  perspective of the defendant, of some form of limited
15  supervision, and that is whether it might be useful to assist
16  her in coping with stress which is, seemingly, on the face of
17  it, reflected in her family circumstances and the incident that
18  gave rise to this proceeding.  But surely even without that
19  incident, it appears to be inevitably a major factor in her
20  life.
21           MR. COHEN:  Right.  So, I think the answer to that,
22  your Honor, is that it would depend a lot on the probation
23  officer and their relationship and their time and ability to
24  help out in that way.
25           I think given the limited nature of this offense, that

1   it is not necessary here.  We've been working with Ms. Greene

2   since last January, our office is open to her, we have social

3   workers in our office who are ready and able to assist on an

4   as-needed basis without some of the structures of supervision.

5            So from our perspective, from a sort of positive

6   rehabilitative or sort of mental health assistance standpoint,

7   it is not necessary here.

8            So fundamentally, I think our position is that this is

9   really a young woman who has achieved a lot under really

10  demanding circumstances.  This is different from virtually all

11  of the clients that we have, in terms of her work ethic and in

12  terms of her being in school, and in terms of her ambitions for

13  herself.

14           And there is one incident on January 1st and it's not

15  reflective of the -- not saying anything about the seriousness

16  of that, the fact that an officer was injured during the fight,

17  Ms. Greene regrets this, and will regret it for the rest of her

18  life because it will follow her for the rest of her life.

19           For those reasons, your Honor, we'd request the Court

20  impose a sentence of time served with no supervision to follow.

21           THE COURT:  Thank you.  Do you wish to be heard?

22           MR. EGAN:  Yes, your Honor.  I just want to highlight

23  some of the things that are in the government's sentencing

24  submission.  I know that's been submitted to the Court and the

25  Court's had an opportunity to review that.  But there are some

1    things that I want to pull out to both highlight and to respond
2    to some of what defense counsel was saying.
3             With respect to overall the punishment and her work
4    ethic and her commendable character and her admirable efforts
5    to overcome what seem like substantial challenges, I think all
6    of those, the government's in full agreement with.  I think
7    that was taken into account when the government didn't pursue a
8    felony and pursued a misdemeanor, and the government's position
9    with respect to the nature of the sentence that it is
10   recommending here.
11            But with that said, I think the factors to look at as
12   Mr. Cohen even hit on himself, one, obviously, the seriousness
13   of the offense.  It is a very serious offense.  And
14   notwithstanding the stresses involved in that particular
15   circumstances, the disturbance that the defendant created in
16   that fight not only risked the staff and put the staff at risk
17   of injury, and ultimately did result in injury, but it created
18   the sort of distracting disturbance that put other patients in
19   danger, and --
20            THE COURT:  Was this the emergency room?
21            MR. EGAN:  This was the emergency -- it was an urgent
22   care facility.
23            THE COURT:  Is it limited, this particular place that
24   all these folks were in, was this specific to psychiatric
25   emergencies or anyone who has an emergent medical problem?

MR. EGAN:  I believe it was just an urgent care facility.  I don't believe it was restricted to -- and the agent is confirming it is a general urgent care facility.

Obviously, the staff at that moment is distracted in trying to deal with a situation that need not have arisen.  So, on that level it is serious, and obviously with respect to the injury to the officers it's serious.  And obviously that speaks to one of the 3553 aims here, which is a general deterrent aim, which is that this is conduct that cannot be tolerated in any environment, but in that environment in particular, where there are people who need urgent care, there are patients who need care, including the defendant's father.  And whether we agree or disagree with that care at that moment, I'm sure we've all been in emergency room situations, a distraction of that level in that situation is simply unacceptable.

I think that certainly with respect to whether this is an aberrant act with respect to the defendant's history as a whole, I certainly take them at their word on that.  That the conduct continued for so long, this wasn't that she got angry, got pushed out, and then calmed down.  This went on for hours and hours in a truly, as has been laid out to some extent, a violent and disrespectful way.  There is obviously a goal in addition of specific deterrence.

I think there is some evidence, while I understand the working, the situation with the various jobs and that leading

1    to missed appointments, it looks like there was one in May, one
2    in July, one in August, one in September. And then obviously,
3    today, when what is arguably the most serious day in the case,
4    gets slept through.
5             I understand there may be individual explanations for
6    each one, hard work, other jobs, other people needing to sub in
7    for other people. I think it also evinces a suggestion that
8    this isn't being taken as seriously as arguably it ought to be.
9    And as is reflective of the seriousness of the conduct. And I
10   think that is why the government's position that in fact a
11   period of additional supervision is appropriate. Both to
12   emphasize the seriousness of what happened, but also as the
13   sentencing submission makes clear, with a recommendation like
14   probation of the drug counseling, but also the anger management
15   to the Court's point.
16            Again, this is not a just sort of momentarily flailing
17   of "I'm really angry, I'm at the DMV, I'm tired of being on
18   line and I scream at someone." This is a violent act followed
19   up by a forcible removal. Spitting on the officer that was
20   attacked. I know that the sentencing submission talked in sort
21   of general terms about what it referred to as disrespectful and
22   violent language to insult and threaten staff that included the
23   kicking in the stomach that was mentioned and the spitting.
24   But some of the specific words that were not put in, but I
25   think bear mentioning now because they go to the level of

1  anger.  One of the people who was watching her in the cell was
2  a guard who herself was going through chemotherapy at the time,
3  and that was evident.  Other than threatening to assault her,
4  "Uncuff me, I'll attack you," the defendant said to her,
5  "You've got cancer, you're going to die."
6          This isn't, it seems to me, indicative of a
7  momentarily lapse.  This is indicative of a real difficulty
8  dealing with anger or stress.  And I think that is why, to the
9  Court's point that supervision with a component of anger
10 management is appropriate.  And also with respect to the
11 specific deterrence, that's why there was the recommendation of
12 significant community service.  And by significant, the
13 government's position is that it should be a significant weekly
14 obligation.
15         I know in the victim impact portion of this, the
16 victim recommended perhaps community service in a triage
17 center.  That would allow the defendant to see not only the
18 nature of what she distracted from, but the stresses that that
19 staff is also undergoing on a day-to-day basis, on an
20 hour-to-hour basis.
21         Like I said, I do think that the government has
22 weighed her lack of criminal exposure in the past, her dealing,
23 arguably commendably, with the burdens that she has to deal
24 with, and I think that has already been taken into account.  I
25 think the sentence along what the government has recommended is

Case 1:13-cr-00423-MHD   Document 19   Filed 11/26/13   Page 14 of 19    14
D9K3GRES                    Sentence

1    one that is reflective of what's appropriate under the 3553

2    considerations.  Thank you.

3            THE COURT:  Thank you.  Ms. Greene, is there anything

4    you would like to say before sentence is imposed?

5            MR. COHEN:  Ms. Greene --

6            (Pause)

7            THE DEFENDANT:  I would just like to say that I'm very

8    sorry for my actions.  That's it.

9            THE COURT:  As I observed before, I have reviewed the

10   presentence report and the submissions of both defense counsel

11   and the prosecutor.  There are a couple of points I think that

12   do stand out and that are pertinent to imposing sentence.

13           Plainly, Ms. Greene at a very young age has borne an

14   extraordinarily heavy burden in circumstances that have left

15   her pretty much, it sounds like, alone in bearing that burden.

16   She appears to have had unfortunately a dysfunctional family

17   situation, in terms of her parents.  She was apparently under

18   the care of an aunt for a period of time that may have been all

19   together too short and then back to her parents.  Her father

20   unfortunately has gone through a major decline and has become

21   in effect a ward of Ms. Greene while she was a teenager, even

22   as he sank into dementia and other difficulties that are

23   outlined in some detail in the presentence report.

24           Through all of that, she seems to have provided as

25   much support as a teenager and very young adult could provide,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

while at the same time undertaking a very consistent and strong effort to maintain some form of employment, bring money in, and to further her education at the same time.

As I think all here today have recognized, that all of that part of her life reflects some unusual qualities and an ability to focus above and beyond what someone would expect for her age on obligations that normally only older, more mature adults would venture to carry.

Thus, even this summer she was apparently employed in three different jobs while also continuing to engage in education. She's now in the Bronx Community College. She had been in a prior institution before that. So, all of that is I think a testimony to someone with an unusually strong character, and in many ways, very high personal standards.

What is of course challenging about this case is, that the conduct in which she engaged on the one occasion that brings us here today was singularly in conflict with all of this. The conduct was of course violent, it injured one or several staffers at the hospital. It continued in one form or another for an extended period of time. In a sense, it would seem from what we know that it was an expression of panic and perhaps panic caused fury, given her understanding of her father's vulnerability, as well as his capacity for injuring others based on prior incidents. To use the vernacular, she appears to have freaked out, and to have done so in an

extraordinarily high pitch and for an extraordinarily length of time, causing injury to others, causing disruption in the setting in which this occurred.

The question then is what to make of this and how that impacts on sentence.  Defendant asks for time served as the appropriate sentence.  While I recognize, as I've said, the defendant's obvious personal qualities and the fact that this event is apparently unprecedented in her life, and that there were militating factors of a psychological nature that triggered what she did, I do not believe that a simple sentence of time served would be appropriate under the circumstances, given, number one, the seriousness of the conduct, its impact on others, and what appears to me, anyway to be a need not only for what's been referred to as general deterrence from such serious acts, but also with regard to the potential benefits to defendant at least of some additional support structure that would be a natural part of a sentence of probation.

Under the circumstances, I will impose a term of one year of probation.  Because of the positive initial tests for controlled substances, there is to be a condition also of drug testing.  I don't know that it is going to yield anything since apparently it appears that the defendant has, as far as we can tell, notwithstanding the missed appointments, refrained from use of drugs during the period of her pretrial supervision. I'm also adding a condition of psychological counseling.  I

Case 1:13-cr-00423-MHD   Document 19   Filed 11/26/13   Page 17 of 19    17
D9K3GRES                         Sentence

1     phrase it this way, although the government has pointedly asked
2     for anger management training, and I confess I do not know
3     whether the various terminologies that we're using implies
4     something different, one from the other.  My sense of it is
5     that given the extraordinary stresses that the defendant has
6     been facing in her life, and at least this one episode and
7     particularly its severity and extent, that psychological
8     counseling appropriate to her particular circumstances would be
9     important to minimize the chance, however small it may be,
10    either of a repeat of this episode or other acts of
11    incompatibility with living in a peaceful and law-abiding
12    society.  So that condition will also be added.
13             The government and the officer who was most severely
14    injured have suggested as well community service.  In the
15    abstract it seems to me that is certainly desirable and maybe a
16    sensitive appreciation of what was going on and how best to
17    bring about a greater assurance that acts of this sort will not
18    reoccur.  In this defendant's particular circumstances, though,
19    it seems to me that given the burdens that she's already
20    carrying and that she is carrying in a very responsible way,
21    that is multiple jobs, at either minimum wage or close to
22    minimum wage, plus apparent participation in a serious degree
23    program at the community college, that the defendant is already
24    so loaded up with responsibilities that I'm not sure that
25    adding a community service obligation on top of that would

               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

1    serve the purpose for which it would otherwise be intended.

2    Accordingly, I'm not going to impose that.  Obviously, if the

3    defendant ever has some free time in her life, she may want to

4    look into volunteer work.  But for the moment it doesn't seem a

5    particularly practical solution to the problems that she is

6    facing.

7              As far as the probation department's recommendation of

8    a fine, I note that the financial data in the presentence

9    report indicates the plaintiff has no assets.  Although she

10   appears to be working feverishly at various jobs and she is

11   facing student loan debts of in excess of $6,000.  Under these

12   circumstances, I think realistically she is not able to pay a

13   fine and I don't intend to impose it.  Therefore, we will waive

14   that.

15             There is a mandatory special assessment of $25 which

16   must be paid promptly.

17             Let me just quickly check my notes to see if there is

18   any other matter that I should be addressing at this point.

19   The only other thing I should mention, two things.  First of

20   all, I have in addition to reading the defendant's submission,

21   also reviewed the letters both from her mother and from various

22   colleagues and friends of hers, and I believe one cousin, which

23   seem to reiterate the general agreement of all here today that

24   she has in her life done an awful lot, working with very

25   little.  And second, with respect to the defendant's failure to

D9K3GRES                          Sentence

1  appear on time today, as well as her non-appearance at a number
2  of sessions she was supposed to attend with pretrial services,
3  it seems to me those essentially go to the point that I've
4  already made, which is the intense pressures under which she is
5  living. I don't regard these events as reflecting a failure to
6  consider or take into account the seriousness of either the
7  crime or this judicial process, and therefore have not weighed
8  that notably in the balance in terms of assessing sentence.
9  We'll leave it at that.
10            I do not recall whether, Ms. Greene, you as part of
11  any plea agreement, you waived your right to appeal. If you
12  did not waive a right to appeal, you will be reminded that you
13  have a right to appeal and will consult with your very able
14  attorney to see whether you want to do that or not.
15            Are there any other matters that we should address at
16  this time?
17            MR. EGAN:  No, your Honor.
18            MR. COHEN:  No, your Honor. Thank you.
19            THE COURT:  Thank you very much.
20                               o0o
21
22
23
24
25